UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLEBURNE TRAINING & FITNESS, INC. and NORTH NOLAN ROAD HOLDINGS, INC. d/b/a REAL PERFORMANCE, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:24-cv-00410-B |
| CHURCH MUTUAL INSURANCE COMPANY, | § § § § | |
| Defendant. | § | |

**PLAINTIFFS' TRIAL BRIEF ON CHURCH MUTUAL INSURANCE COMPANY'S LIABILITY FOR UNFAIR CLAIMS SETTLEMENT PRACTICES**

TO THE HONORABLE JUDGE JANE J. BOYLE:

Plaintiffs, Cleburne Training & Fitness, Inc. and North Nolan Road Holdings, Inc. d/b/a Real Performance file this Trial Brief on Church Mutual Insurance Company's Liability for Unfair Claims Settlement Practices under Texas Insurance Code Chapter 541 and would show:

**LEGAL STANDARD**

Plaintiffs assert claims under Texas Insurance Code 541.060(a)(1), (a)(2)(A), (a)(3), and (a)(7). Expert testimony is not required on Plaintiffs' claims under the Texas Insurance Code. *See, e.g., Shiva Worldwide v. Great Lakes Reinsurance (U.K.) PLC*, 2011 WL 5325788 at *2 (S.D. Tex., 2011) ("Because the Texas Insurance Code provide sufficient guidance to allow juries to determine whether an insurer's conduct violates the Texas Insurance Code, expert testimony is not necessary") (emphasis added); *Caramba, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2020 U.S. Dist. LEXIS 242250, *20 (S.D. Tex. 2020) ("Nationwide argues that the jury can reach a decision on bad faith without expert testimony. The Court agrees.").

1

The Texas Insurance Code outlines the standards that juries are to apply when considering whether an insurer's actions were unfair or deceptive. By specifying proscribed conduct, these portions of the statute provide sufficient guidance to allow juries to determine whether an insurer's conduct violates the Texas Insurance Code. *Shiva*, at *2-3. Expert testimony is not necessary to aid a jury in considering claims for bad faith. *Id*.

Texas Courts have repeatedly held that evidence that an insurer's reliance upon experts to deny a claim was pretextual is sufficient to support a finding of a knowing violation of Texas Insurance Code Chapter 541. *See Hub Texas, LLC v. Arch Specialty Ins. Co.*, No. 5:21-CV-180-H-BQ, 2023 WL 11859631, at *14-17 (N.D. Tex. 2023) (denying summary judgment where plaintiff's submitted evidence that insurer ignored evidence contradicting its expert's opinions); *2223 Lombardy Warehouse, LLC*, 2019 WL 1583558, at *9 (denying summary judgment where plaintiffs submitted evidence that adjuster ignored contradictory evidence); *Carper v. State Farm Lloyds*, No. 301-CV1979-M, 2002 WL 31086074, at *8 (N.D. Tex. Sept. 13, 2002) (denying summary judgment on breach of duty where report indicated "some of the potential sources [of damage] constituted covered perils under the [p]olicy"); *Simmons*, 963 S.W.2d at 44 ("the evidence is legally sufficient that [the insurer] breached its duty of good faith and fair dealing by denying the [insureds'] claim based upon a biased investigation intended to construct a pretextual basis for denial."); *cf. Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 897 (5th Cir. 2018) (observing "that courts have held that 'an insurer's reliance upon an expert report, standing alone, will not necessarily shield the carrier if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable' " (citation omitted)).

**ANTICIPATED TRIAL EVIDENCE**

A. **Texas Insurance Code 541.060(a)(1).**

Under Texas Insurance Code 541.060(a)(1), "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary" "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue." Knowing misrepresentations that damage falls within exclusionary language are sufficient to create liability under Texas Insurance Code 541.060(a)(1). *See Albracht v. Indem. Ins. Co. of N. Am.*, No. 2:19-CV-72-Z-BR, 2019 WL 7040333, at *3 (N.D. Tex. Nov. 20, 2019) (Reno, M.J.), *supplemented*, No. 2:19-CV-72-Z-BR, 2019 WL 7040299 (N.D. Tex. Dec. 2, 2019), *report and recommendation adopted*, No. 2:19-CV-72-Z-BR, 2019 WL 7039749 (N.D. Tex. Dec. 20, 2019) ("Albracht has also sufficiently pleaded the 'how' or 'why.' Hamilton's investigation, characterization of material facts relating to coverage, and conclusions resulted in denial of Albracht's claim, which meant IIC was not required to pay anything on Albracht's claim."); *Glidewell v. Safeco Ins. Co. of Indiana*, No. 3:15-CV-1099-G, 2015 WL 4868483, at *5 (N.D. Tex. Aug. 13, 2015) (collecting cases supporting a misrepresentation as to a "material fact" need not be specifically about the policy).

In its August 31, 2023 claims denial letter, authored by Mitchell Kies, Church Mutual asserts, "*The Engineer confirmed* denting of your roof, but *only one impact caused functional damage*. *Based upon the policy language outlined above*, Church Mutual Insurance Company will not extend coverage for your claimed roof damage that was *determined to be cosmetic in nature*" (emphasis added).[1] Kies's statement that Conner's engineering report supported that the observed hail damage fell within the language of exclusion in the Roof Surfacing Limitation Endorsement is a misrepresentation of material facts related to coverage and a misrepresentation of the Roof Surfacing Limitation Endorsement in the Policy.

---

[1] DOC 45-1, P. 3

3

First, Conner used an extracontractual definition of functional damage that is inconsistent with the language of the Policy. Conner states:

> Hail damage to metal roofs can present as dents with punctures or other holes, dents on seams causing separations, abrasions of any protective coatings, and/or any other form of reduction in the roof's **water-shedding efficiency**. Round dents alone, without associated punctures, abrasions of the coating, and/or seam separations, are not considered hail damage that has **reduced the roof covering's service life**[2]
> …
> The siding was not functionally damaged **(cracked, split)** by hail impacts.[3]

However, the Policy states:

> We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements *to the same extent as it did before the cosmetic damage occurred*. (emphasis added)[4]

Kies admits that he recognized Conner used extracontractual definitions to support her opinions and that he did not try to reconcile the disparate definitions prior to denying coverage:

> Q. Is your job to determine coverage based upon what the engineer thinks is cosmetic damage or what the policy says is cosmetic damage?
> A. Policy.
> Q. You would agree with me that the terms the engineer used are not in the relevant endorsement in the policy, correct?
> A. Correct.
> Q. After you received this engineering report did you go back to talk to the engineer about the disparate definitions she used in her report and how that would apply to coverage under the policy?
> A. No, not that I recall.[5]

As such, Kies's statement that the Engineer (Conner) confirmed the damage was "cosmetic in nature" is a misrepresentation, because Conner did not state the damage fell within the definition described in the Policy.

---

[2] DOC 45-5, P. 15.
[3] Id at P. 2.
[4] DOC 45-2.
[5] Exhibit 1 – Deposition of Mitchell Kies, P. 67, L. 3-15

Second, although Conner admitted that hail damage to the protective coating constituted functional damage, Kies admits that Church Mutual did not perform necessary testing to confirm whether the coating had been damaged:

> Q. [Conner] specifically states that one of the ways that you can evaluate whether or not hail has damaged the roof is abrasion of the protective coating. Do you see that?
> A. I do.
> Q. Prior to forming a coverage position in this case did you ask that any of the hail indentations that you observed be tested for purposes of determining whether or not there's an abrasion of the protective coating?
> A. No, not that I recall.
> Q. Are you aware that metallurgist can actually test whether or not the protective coatings have been damaged?
> A. Yes.
> Q. Have you seen in other cases where a metallurgist has actually performed that test?
> A. I am aware of it.[6]

Thus, Kies's statement, "The Engineer *confirmed*… only one impact caused functional damage"[7] is a misrepresentation since neither Conner, nor Church Mutual performed necessary testing to confirm her conclusions.

Because Church Mutual both misrepresented that Conner found that the damage was cosmetic under the Policy, since she used an extracontractual and inapplicable definition, and because Church Mutual misrepresented that Conner had confirmed her findings, an act neither Conner, nor Church Mutual actually completed, Church Mutual is liable for misrepresentations of facts related to coverage under Texas Insurance Code 541.060(a)(1).

**B. Texas Insurance Code 541.060(a)(2)(A).**

Under Texas Insurance Code 541.060(a)(2)(A), "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary," by "failing to attempt in

---

[6] Exhibit 1 – Deposition of Mitchell Kies, P. 67, L. 16 – P. 68, L. 9.
[7] DOC 45-1, P. 3.

good faith to effectuate a prompt, fair, and equitable settlement of" "a claim with respect to which the insurer's liability has become reasonably clear." Evidence that a carrier performed a substandard investigation, failed to include observed damages, or relied upon biased and conclusory opinions is sufficient to create liability under this Section. *See Yarco Trading Co., Inc. v. United Fire & Cas. Co.*, 397 F. Supp. 3d 939, 946 (S.D. Tex. 2019); *see also Roach v. Allstate Vehicle & Prop. Ins. Co.,* No. 3:15-CV-3228-G, 2016 WL 795967, at *6 (N.D. Tex. 2016); *see also Denley Grp., LLC v. Safeco Ins. Co. of Indiana*, No. 3:15-CV-1183-B, 2015 WL 5836226, at *4 (N.D. Tex. 2015).

Both Church Mutual's adjuster, Kies, and its engineer, Conner, admit that the hailstorm at issue caused functional damage to the insured Property:

> Q. You see where [Conner's report] says, "dents" -- "hail damage to metal roofs can present as, and then one of the things that's identified is "dents on seams causing separation." Do you see that?
> A. I do.
> Q. Okay. In your review of the file did you actually determine that there was at least one dent on the property caused by hail that had caused a separation of a seam?
> A. Yes.
> Q. And, so, in your opinion that was functional damage that was covered under the policy; is that correct?
> A. It is.
> Q. Did you make the determination that that damage occurred on the date of loss, March 16th, 2023?
> A. Based upon the report, yes.
> Q. Okay. So, to be clear your determination on behalf of Church Mutual is there was at least one indication of functional damage to the roofing system caused by hail on the date of loss, correct?
> A. That's fair.[8]

Because Kies, on behalf of Church Mutual, identified that the damage fell outside the language of exclusion in the Roof Surfacing Limitation Endorsement, Church Mutual's liability was reasonably clear. Nevertheless, Kies failed to perform additional testing on the coatings of the roof,

---

[8] Exhibit 1 – Deposition of Mitchell Kies, P. 70, L. 5—P. 71, L. 1.

which was identified as necessary by Conner, to determine whether other dents from the same storm were functional or excluded as cosmetic. Without that "vital"[9] testing, Church Mutual violated its obligations to promptly, fairly, and equitably settle the claim. As a result, Church Mutual is liable under Texas Insurance Code 541.060(a)(2)(A).

C. **Texas Insurance Code 541.060(a)(3).**

Under Texas Insurance Code 541.060(a)(3), "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary," by "failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim." In evaluating 541.060(a)(3), the Court looks to the adjuster's diligence in providing a *reasonable* explanation for the basis of denial, based upon the investigation of the adjuster. *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 795 F. Supp. 2d 493, 530 (N.D. Tex. 2011), *aff'd*, 709 F.3d 515 (5th Cir. 2013).

Here, Kies's explanation in his August 31, 2023 letter is, by any objective standard, unreasonable. Church Mutual and Kies admit that the engineering report upon which he was relying lacked necessary testing and used an extracontractual definition for purposes of the exclusionary language. Further, Kies admitted that he received an engineering report from Plaintiffs finding that the hail damage was functional at least a week before sending his claims denial letter:

> Q. Did you have any conversation with or correspondence with the engineer that wrote the engineering report on behalf of the insured or the PA prior to August 31st, 2023?
> A. Not that I remember.
> Q. Is it a true statement that you received that report on August 22nd, 2023?
> A. I don't know about that.

---

[9] DOC 30, P. 3 (describing metallurgical testing of the coatings as "vital" to Church Mutual's coverage defense).

> Q. If it -- if your claims notes say that's when you received it, is there -- do you have any reason to dispute that?
> A. That document shows the date that I entered that note. If somebody sent me something on a Friday night and I didn't put it into a claim file until Monday morning or Monday afternoon, they would differ.
> Q. I'm not trying to trick you on when you received it. I just want to make clear that this was -- this would have been -- at the time you wrote this claims note you would have had this in your possession, right?
> A. Correct.
> Q. Okay. And this was at least a week before you entered your claims decision, correct?
> A. According to the documents, yes.[10]

The fact that Kies did not investigate or address in his letter the conflicting opinion from a professional engineer that the damage was "functional" and therefore, covered under the Policy, is evidence that his explanation regarding the application of the exclusionary language was *unreasonable* in relation to the facts of the claim. [11]

### D. Texas Insurance Code 541.060(a)(7)

Under Texas Insurance Code 541.060(a)(3), "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary," by "refusing to pay a claim without conducting a reasonable investigation with respect to the claim."

The evidence at trial will show that Church Mutual performed a knowingly pretextual investigation for purposes of denying the claim. Church Mutual expressed an intent to partially deny the claim on May 9, 2023, based upon the applicability of the Roof Surfacing Limitation Endorsement prior to retaining an engineer to evaluate whether the damage fell within the exclusionary language of the Policy:

> Q. Now I will scroll back up so you can see. The start of this claims note says "coverage update." Do you see that?

---

[10] Exhibit 1 – Deposition of Mitchell Kies, P. 83, L. 14 – P. 84, L. 12.
[11] The knowing unreasonableness of Church Mutual's actions is supported not just by the evidence described under this heading, but by the evidence described with regard to each of the other subsections. Plaintiffs do not repeat the citations to that evidence out of judicial efficiency.

8

> A. I do.
> Q. And it states, "Completed call with Mr. Mark Simmerman. Explained IA findings" -- I'll represent to you that means independent adjuster findings -- "for dented roof materials." Do you see that?
> A. I do.
> Q. It says, "In addition we reviewed CP 1036 10/12 roof surface endorsement." Do you see that?
> A. I do.
> Q. It says, "We will generate partial denial to insured contact at address below," right?
> A. It does.
> Q. Okay. "Reviewed forms and policy language in detail with insured today." Do you see that?
> A. I do.
> Q. Okay. So, I asked you a minute ago if at the time that you took over the claim you understood that Church Mutual had already made a claims decision with regard to the applicability of the limitation on coverage for roof surfacing.
> A. Okay.
> Q. And do you now understand based upon these claims notes that Mr. Barnum had represented to the insured that they were going to make a partial denial to the insured based upon the CP 1036 10/12 roof surface endorsement?
> A. It appears that's what they've got in the file. Yes.[12]

Without a qualified expert evaluation, Church Mutual's coverage conclusion is unequivocally pretextual.

Even more shockingly, the independent adjuster upon whom Church Mutual relied for purposes of the applicability of the endorsement, Bond Harrison, admitted in writing that he was not aware of whether the Policy even had a Roof Surfacing Limitation Endorsement (Cosmetic Damage) exclusion and did not review the language of exclusion under the Policy to apply the applicable definitions to the damage he observed:

> I have not been able to confirm that a cosmetic exclusion is applied to this policy.
> …
> The damage to the roofing system does appear cosmetic in nature (dent to metal). The roofer pointed out many impact dents which were on "seam" (where one panel overlaps the other). He strongly believes these impacts would cause any cosmetic exclusions to be nullified. I found these impacts as well as the others to be impact dents to metal.[13]

---

[12] Exhibit 1 – Deposition of Mitchell Kies, P. 31, L. 19 – P. 33, L. 4.
[13] Exhibit 2 – Leading Edge Claims Loss Report, CHURCH MUTUAL 000595-000596.

Despite possession of these written admissions from Harrison, and without hiring competent experts to evaluate the character of the damage for purposes of the applicable Policy definitions, Church Mutual and its adjuster, Jesse Barnum, nonetheless orally expressed an intent to Plaintiffs to deny coverage under the Policy's Roof Surfacing Limitation Endorsement and documented that finding in its claims notes.

### E.  Independent Injuries Suffered by Plaintiffs.

The Policy provides that the amount of loss is calculated "at the time of loss."[14] Thus, the value of the breach of contract damages for Church Mutual's breach of the Policy is calculated as the costs to repair or replace the damage on March 16, 2023, $859,641.67. Since that date, the costs to repair and replace the damage have increased by at least $65,971.00 (calculated as of the date of expert disclosures). That is an independent injury that Plaintiffs have suffered separate from lost policy benefits.

Further, Plaintiffs received an offer for the sale of the Property, which was subsequently rescinded due to the condition of the roofing system which remains unrepaired due to Church Mutual's unreasonable investigation and refusal to pay the claim. Plaintiffs have been damaged by continuing to pay utilities and taxes for an unoccupied building, loss of rents because the building is in unrentable condition due to damage, and lost revenue from the sale of the property that was rescinded due to the damage. These constitute independent injuries that Plaintiffs have suffered separate from lost policy benefits.

---

[14] Exhibit 3 – CHURCH MUTUAL 000112.

Respectfully submitted,

*/s/ Benjamin D. Doyle*
Benjamin D. Doyle
State Bar No.: 24080865
STOCKARD, JOHNSTON, BROWN,
NETARDUS, & DOYLE, P.C.
P.O. Box 3280
Amarillo, Texas 79116-3280
(806) 372-2202 - Telephone
(806) 379-7799 - Fax
bdoyle@sjblawfirm.com
**ATTORNEYS FOR PLAINTIFF**

**DUGAS & CIRCELLI, PLLC**
By:   */s/ Vincent P. Circelli*
Vincent P. Circelli – Local Counsel
State Bar No. 24058804
1701 River Run, Suite 703
Fort Worth, Texas 76107
Telephone: (817) 697-4942
Facsimile: (817) 697-4944
vcircelli@dcclawfirm.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2025, a true and correct copy of the foregoing was served on all counsel of record pursuant to Federal Rule of Civil Procedure, as follows:

J. Mark Kressenberg – Lead Attorney
Lauren Figaro
4400 Post Oak Parkway, Suite 1000
Houston, Texas 77027
mkressenberg@thompsoncoe.com
lfigaro@thompsoncoe.com

Rhonda J. Thompson – Local Counsel
700 North Pearl Street, 25th Floor
Dallas, Texas 75201
rthompson@thompsoncoe.com

**THOMPSON, COE, COUSINS & IRONS, LLP**
**ATTORNEYS FOR DEFENDANT**

*/s/ Benjamin D. Doyle*
Benjamin D. Doyle