IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLEBURNE TRAINING & FITNESS, INC. and NORTH NOLAN ROAD HOLDINGS, INC. d/b/a REAL PERFORMANCE,    *Plaintiffs*, | § § § § § | |
| VS. | § § | CIVIL ACTION NO. 3:24-CV-0410-B |
| CHURCH MUTUAL INSURANCE COMPANY,    *Defendant*. | § § § § | |

**DEFENDANT CHURCH MUTUAL INSURANCE COMPANY'S
OPPOSED MOTION TO RECONSIDER**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant Church Mutual Insurance Company ("Church Mutual") files this Opposed Motion to Reconsider this Court's Order excluding the supplemental report of Defendants' expert, Ronald Dutton [Doc. 61]. In support, Defendant would respectfully show as follows:

**I.
LEGAL STANDARD FOR MOTION TO RECONSIDER**

Rule 54(b) governs a motion to reconsider an interlocutory order. *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 481 (N.D. Tex. 2016). Whether to grant a motion to reconsider an interlocutory order is within the discretion of the court. *Id. citing Dos Santos v. Bell Helicopter Textron, Inc. District*, 651 F.Supp.2d 550, 553 (N.D.Tex.2009). The standard governing a motion to reconsider under Rule 54(b) is "less exacting" than the standard imposed by Rules 59 and 60, which govern motions to reconsider final judgments. *Id.* However, similar considerations inform the court's analysis. *Id*. These considerations include "allowing[ing] a party to correct manifest errors of law or fact or to present newly discovered evidence." *Grand Famous Shipping Ltd. v. Port of Houston Auth.*, 572 F. Supp. 3d 307, 316 (S.D. Tex. 2021). Classically, courts have granted

a motion to reconsider an interlocutory order for one of three reasons: "(1) the judgment is based upon a manifest error of fact or law; (2) newly discovered or previously unavailable evidence exists; (3) manifest injustice would otherwise result; (4) there has been serious misconduct by counsel; and (5) an intervening change in controlling law alters the appropriate outcome." *Grand Famous Shipping Ltd. v. Port of Houston Auth.*, 572 F. Supp. 3d at 316 (quoting *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. 2002)).

A motion for reconsideration based on clear error or manifest injustice may be considered even if the law or facts pertaining to the defendants' motions are unchanged. *Canadian Real Estate Holdings, LP v. Karen F. Newton Revocable Tr.*, No. 4:21-CV-333-KPJ, 2023 WL 2586305, at *4 (E.D. Tex. Mar. 21, 2023). In respect to clear error or manifest injustice, "any litigant who brings a motion to reconsider based on the need to correct a clear error of law or manifest injustice should 'evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant.'" *Id. (citing Buerger v. Watson*, No. 5:18cv161, 2021 WL 7184972, at *6 (E.D. Tex. Mar. 2, 2021) (quoting *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990))). For a court's judgment to be clearly erroneous, the court's judgement must be "dead wrong." *In re Trevino*, 633 B.R. 485, 501 (Bankr. S.D. Tex. 2021). For a court's judgment to be manifestly unjust, there must be "a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *In re Trevino*, 633 B.R. 485, 507 (Bankr. S.D. Tex. 2021).

## II.
### EXHIBIT LIST (CHRONOLOGICAL)

- EXHIBIT A – Plaintiffs' metallurgists original report, served 7/12/2024
- EXHIBIT B – Defendant's metallurgists original report, served 10/7/2024
- EXHIBIT C – Plaintiffs' metallurgists rebuttal report, served 11/22/2024
- EXHIBIT D – Defendant's metallurgist's supplemental report, served 11/25/2024

### III.
### ARGUMENTS AND AUTHORITIES

This Court's judgment granting Plaintiffs' motion to exclude Ronald Dutton's supplemental report is clearly erroneous and will cause manifest injustice. First, this Court's judgment that Dutton's subsequent report is not supplemental solely because it is based on new testing data is a manifest error of law and is manifestly unjust. Second, this Court's judgment that Plaintiffs were prejudiced because they did not have time to produce rebuttal reports is based on a manifest error of fact because it relies solely on a misidentified deadline under the rules by which Plaintiffs would have had to produce a rebuttal report. Finally, this Court's judgment about the "diminished" importance of Dutton's testimony to Church Mutual's case is based on a manifest error of law because it directly contradicts a previous ruling by the Court on this exact issue. Allowing Plaintiffs' expert to falsely testify regarding the lack of basis for Dutton's opinions at trial would result in a manifest injustice.

A. *This Court's judgment that Dutton's subsequent report is not supplemental solely because it is based on new testing data is a manifest error of law and is manifestly unjust.*

Federal Rule of Civil Procedure 26(e)(1)(A) *requires* disclosure of a supplemental report when information comes to light that makes the previous report incomplete, unless the information was previously known. *See Ramirez v. City of El Paso, Tex.*, No. EP-17-CV-00193-DCG, 2022 WL 16702705, at *1 (W.D. Tex. Nov. 2, 2022). Based on this rule, courts have routinely rejected "supplemental" expert reports and testimony because the opinions are based upon information available prior to the deadline for service of initial expert reports. *See, e.g., Simmons v. Johnson*, No. CIV.A. 06-325-A-M2, 2008 WL 474203, at *2 (M.D. La. Feb. 14, 2008).

In its order, this Court acknowledged that Dutton's supplemental report was based on information that was not available prior to the deadline for the initial report, namely, the lab results

for the metallurgical samples.[1] However, it is solely for this reason, reliance on unavailable information, that the court held that this subsequent report is a new opinion that should be excluded. [Doc. 61, p. 7.] Specifically, this Court held "[e]ven though Dutton states that his supplemental findings support his original conclusions, they still offer new opinions, ***because*** they analyze new laboratory test results." [Doc. 61, p. 7 (emphasis added)]. For this specific reason, this Court held that Dutton's supplemental report "goes beyond filling the interstice of an incomplete report." Importantly, the court offers no other reason for its conclusion that Dutton's opinions in his supplemental report are new.

This is clearly erroneous reasoning because the statutory authority and every case on this subject establishes that <u>obtaining new information that was not previously known is one of the things that justifies the filing of a supplemental report</u>. This includes all the cases on the subject cited by the court in its opinion. *See e.g. Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 421 (S.D. Tex. 2012)(Doc. 61, pp. 6,7); *See e.g. Pratt v. Landings at Barksdale*, No. 09-1734, 2013 WL 5375951, at *2 (W.D. La. Sept. 24, 2013)(Doc. 61, p. 7). If a supplemental report is required when an expert obtains new information, but then the court excludes testimony from the expert derived from the report *solely* because it is based on new information, then it is functionally impossible for a supplemental report not to be excluded from evidence in direct contravention of Rule 26(e)(1)(A). This is a result that is both inequitable and not in line with applicable policy. *In re Trevino*, 633 B.R. 485, 507 (Bankr. S.D. Tex. 2021). Therefore, the Court must rescind its ruling excluding Dutton's testimony based on the testing data he obtained and discussed in the supplemental report.

---

[1] The court acknowledged that "Dutton did not receive the lab results until after submitting his initial expert report." [Doc. 60, p. 7]

The case law cited by this court in support of its holding does not support the conclusion that a report cannot be admitted because it relied upon new information. In *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 421 (S.D. Tex. 2012), the court held that the supplemental report was not allowed because the information that supplemented the report was not truly new.[2] In *Pratt v. Landings at Barksdale,* No. 09-1734, 2013 WL 5375951, at *2 (W.D. La. Sept. 24, 2013) the court excluded the supplemental report because it contained new opinions *and* the new opinions were "based upon information available prior to the deadline for service of initial expert reports." Because the information was not new, the court held that there was no "substantial justification" or explanation for the failure to include the opinions in the original report. *Id.* This is not the case here. In this case, the opinions contained in Dutton's report are based upon information that was not available to Dutton prior to the deadline for service of the initial expert reports. These cases do not provide support for the court's ruling here that Dutton's supplemental report went beyond filling out the interstices of a complete report. In fact, they illustrate exactly why a report should not be omitted solely because it relies on new information.

The arguments contained in Plaintiffs' motion also do not provide support for this Court's ruling here. Ultimately, the moving party bears the burden to show that a challenged supplemental report represents impermissible new opinions or appropriate supplemental opinions. *Cooper v.*

---

[2] According to the court, "[d]efendant Con–Way's assertion that supplementation is proper at any time before the end of the discovery period may be correct if the Court determines that the facts obtained and any opinions stemming from a Rule 35 examination were 'not available at the time of the initial disclosure.' Under the circumstances of this case, the Court does not believe that Defendant Con–Way's lack of diligence in seeking a Rule 35 examination would make the information obtained from such an examination 'unavailable' at the time Defendant Con–Way initially disclosed its expert reports." *Id.* at 421. In this case, this Court did not rule that Defendant lacked diligence in seeking metallurgical testing of the roof panels. In fact, Defendant's diligence was demonstrated by its prompt request for the roof panels for testing as soon as it realized testing would be necessary and before submitting Dutton's original report. The necessary delay was caused by the length of time it took for Plaintiff's expert to send the roof panels to Dutton and the length of time it took for the testing company *See* Doc. 41, Exhibit A (Affidavit of Ron Dutton); *See also* Doc. 41, p. 9 ("Defendant had to request the metallurgical samples tested by Plaintiffs' expert as part of its requests for production on August 26, 2024. Doc. 30-3, p. 5. Plaintiffs Eventually provided those metallurgical samples without objection, but they were not received until September 24, 2024.").

*Meritor, Inc.,* No. 4:16-CV-52-DMB-JMV, 2019 WL 545187, at *7 (N.D. Miss. Feb. 11, 2019). Plaintiffs never addressed this issue in their motion to exclude.[3] The closest they come is to state without support, that Dutton disclosed a "new opinion." [Doc. 44, p. 19.]

In Plaintiffs' reply to plaintiffs' response, they state that Dutton's supplemental report contains an inadmissible new opinion because the supplemental report is "an attempt to fix the original report" after Plaintiffs produced a rebuttal report criticizing Dutton for his lack of testing. [Doc. 54, p. 9.][4] Addressing criticisms in a subsequently issued rebuttal report is not an attempt to fix a mistake as contemplated in the case cited by Plaintiffs for this assertion.[5] In fact, courts have specifically held that it is proper for an expert to submit a supplemental report to address criticisms in a rebuttal report. *See, e.g., In re Enron Corp. Sec., Derivative & ""Erisa" Litig.*, No. CIV.A. G-02-0299, 2007 WL 5023541, at *5 (S.D. Tex. Feb. 1, 2007)(*citing Wilson v. Sundstrand Corp.*, No. 99 C 6944, 2003 WL 22012673, at *8 (N.D. Ill. Aug. 25, 2003). ("Supplementation may be proper when it is in response to questions or challenges to the expert's opinion raised by the opposing party.") For this reason, Dutton submitting a supplemental report to address criticisms in

---

[3] When responding to Plaintiffs' motion to exclude, it was difficult to determine what reason, if any, Plaintiffs asserted Dutton's supplemental report was not in compliance with the disclosure rules. From the case law Plaintiffs cited, it appeared they were arguing that Dutton's supplemental report was not incompliance because his initial report did not comply with disclosure requirements. [*See* Doc. 44, pp. 14-15 *citing Harmon v. Georgia Gulf Lake Charles, L.L.C.*, 476 F. App'x 31, 36 (5th Cir. 2012). This Court in case has not ruled that the supplemental report failed to meet disclosure standards.

[4] In Plaintiffs' experts' rebuttal to Dutton's first report, he states: "In the 'Element' Report' section of the Church Mutual report, page 6., Mr. Dutton uses stereoscope images to somehow confirm age differences between divots. This is *technically incorrect* and there is no testing data to confirm the statement. [**Exhibit B**., ¶ 3.0.3.]

[5] The case cited by Defendant in support of this assertion is *Williams v. BP Expl. & Prod. Inc.*, No. 1:22-CV-00278-LG-BWR, 2023 WL 11876386, at *3 (S.D. Miss. Sept. 28, 2023). In this case, the party issuing the supplemental report was attempting to amend testimony in his initial report so that it would not contradict testimony he gave in a subsequent deposition. *Id.* at *2. The court held that this was not a supplement based on new information, but rather an attempt to "fix" the report. *Id.* at *3. Additionally, in that case the subsequent report issued by the expert completely contradicted the opinions in the original report. *Id.*

Plaintiff's rebuttal report is another separate reason why Dutton's opinions contained in his supplemental report should not be excluded from his testimony at trial under Rule 26(e)(1)(A).

Dutton's supplemental report does not contain a "new opinion", but rather merely elaborates on and provided empirical support for the conclusions Dutton had reached earlier in his initial expert report. *See In re Enron Corp.*, No. 2007 WL 5023541, at *5 ("This Court agrees with Citigroup Defendants that, substantively, Denis's supplemental report is not a new opinion, but presents data that support Abbott's original conclusion and corrects the flaw in her comparison of underlying data."). Dutton's testimony based on his supplemental report cannot be excluded just because it includes new data that improves the original report. "Several courts have found it permissible for a plaintiff to 'use supplementation of the expert report as an opportunity to improve upon the initial expert report.'" *In re Enron Corp*, 2007 WL 5023541, at *8 (*citing Talbert v. City of Chicago*, 236 F.R.D. 415, 423 (N.D.Ill.2006) and *Confederated Tribes of Siletz Indians v. Weyerhaeuser Co.,* No. CV 00–1693–PA, 2003 WL 23715981 (D.Or. Jan.21, 2003). Even if supplementation improves the original report, supplementation is allowed, as long as it is based on new information that was not available when the original report was disclosed.

In conclusion, this Court's judgment that Dutton's subsequent report is not supplemental solely because it is based on new testing data is a manifest error of law and is manifestly unjust. Case law and statutory authority support Defendant's ability and obligation to supplement an expert report after receiving new testing data, even if that supplemental expert report is improved by the addition of the new data. Therefore, this Court should hold Dutton's supplemental report as proper supplementation in accordance with Rule 26(e)(1)(A) and permit his testimony concerning the results of the metallurgical testing he had performed on Plaintiffs test panels.

**B.  *This Court's judgment that Plaintiffs did not have time to produce rebuttal reports is based on a manifest error of fact because the Court relies solely on a misidentified deadline under the rules by which Plaintiffs would have had to produce a rebuttal report.***

To be clear, Dutton's subsequent report was a proper supplemental report under 26(e)(1)(A). As such, there is no need for an analysis of whether Dutton's "late" disclosure was justified or harmless under Rule 37(c), because the disclosure was properly made under Rule 26(e). *See n re Pearl Res. LLC*, No. 20-31585, 2023 WL 8642303, at *4 (Bankr. S.D. Tex. Dec. 13, 2023)("Under Rule 37(c), '[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or harmless.' Thus, the analysis turns to whether the failure to disclose was substantially justified or harmless.").

Even so, Defendants will now address the manifest error of law and fact that supports this Court's ruling that Dutton's "late" disclosure prejudiced Plaintiffs. [Doc. 61, p. 8]. Specifically, this Court ruled that "Plaintiffs did not have time to produce rebuttal reports after Dutton disclosed the samples used in his supplemental report one week before the discovery deadline." [Doc 61, p. 8]. This is factually and legally incorrect. The very Rule 26(e)(1)(A) that allows Defendant to submit Dutton's supplemental report analyzing the new testing data, also allowed Plaintiffs to supplement their report based on the new testing data after the discovery deadline. *See Ramirez v. City of El Paso, Tex.*, No. EP-17-CV-00193-DCG, 2022 WL 16702705, at *1 (W.D. Tex. Nov. 2, 2022)("Rule 26(e)(1)(A) contemplates that parties must make supplemental disclosures after discovery closes."). For the same reason that Defendants could issue Dutton's supplemental report after the initial expert disclosure deadline because they need to include new information, Plaintiffs were allowed to issue a supplemental report addressing Dutton's findings even after the one-week discovery deadline.

Plaintiffs actually had until the pre-trial disclosures were due to issue a supplemental report under Rule 26(e)(2) in response to Dutton's supplemental report and the new testing data. *See In re Complaint of C.F. Bean L.L.C.,* 841 F.3d 365, 371 (5th Cir. 2016)("Parties must make these supplemental expert disclosures by the time Rule 26(a)(3) pretrial disclosures are due."). This gave Plaintiffs 2 months and 30 days to issue their supplemental report.[6] Because this Court's misidentification of the deadline for Plaintiffs to supplement their expert report is the *sole* basis cited by this Court for prejudice to Plaintiffs from Dutton's "late" report, the court's ruling about prejudice to Plaintiffs is based on a manifest error of fact.

Plaintiffs have not identified any other reason that they were prejudiced by Dutton's supplemental report. Plaintiffs asserted that they could not produce a rebuttal report to Dutton's supplemental report because they "do not possess cross-sectional metallography testing reports and cannot obtain them prior to trial under the trial court's scheduling order." [Doc. 54, p 10.] This is a false statement that was already addressed in Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Quash Plaintiffs' Subpoena to United States Steel. [Doc. 41., pp. 5-7]. Because Defendant's Reply addresses photo exhibits, it is excerpted below for the court's convenience:

> An examination of the photos in Plaintiffs' expert report and the report issued by Shannon reveals that Plaintiffs' metallurgical expert already tested the same portions of the metal panels before they were tested by Shannon. In Plaintiffs' response, they assert that Shannon "cut and damaged" the metal roof sample in such a manner that it "practically prohibits the sample from being dissected and viewed in other areas." [Doc. 40, p. 5]. They cite this undated photo, which they took themselves and did not provide to Defendants before filing this motion.

---

[6] Dutton's supplemental report was disclosed on November 25, 2024 and pre-trial disclosures were due and submitted by both parties on February 24, 2025.

Page **9** of 15



The photos from Plaintiffs' own expert report show that Plaintiff's' metallurgist is the one who made these cuts on the metal roof sample.



*Exhibit B*, p. 4. Plaintiffs' metallurgists made these cuts because they already tested

these exact same areas of the roof sample before they were provided to Defendants.[7]

Further, a comparison of Plaintiffs' expert report and the report issued by Shannon reveals that Plaintiffs' expert already performed the same type of testing that Shannon performed on these portions of the roof panel. According to his report, Plaintiffs' expert conducted electron microscope scanning and elemental analysis of the roof panels. According to her report, Shannon conducted electron microscope scanning and elemental analysis. The descriptions of the type of testing by each expert are contained in their reports and excerpted below:

> **Testing performed by Plaintiffs' Expert (Exhibit B, p. 2)**
> **Electron Microscopy (EM)**
>
> *2.0.1. Procedures*
>
> Segments of the metal roof prepared for analysis (Figures 2, 3, and 4) were examined directly without sputter coating or carbon coating the specimens. Testing was conducted using a Zeiss EVO10 LaB$_6$ scanning electron microscope (SEM) operating in high vacuum mode at a landing energy of 22.5keV. Elemental analysis was conducted using an Oxford X-Max energy dispersive spectroscopy (EDS) system.
>
> **Testing Performed by Shannon (Exhibit A2., p. 3)**
> Five samples from a GALVALUME® coated roof located in Cleburne, Texas and of more than 30 years in age were submitted to the U.S. Steel Research & Technology Center for examination. Samples Core 1 through Core 5, as shown in Figure 1 in the as-received condition, exhibited surface divots believed to be damage from hail. Pre-cut sections of samples Core 1 (Areas A and B), Core 2 and Core 4 were selected for further analysis and examined using field emission scanning electron microscopy (FESEM) in backscattered imaging mode (HDBSD) and energy dispersive spectroscopy (EDS) for chemical composition.

Because Plaintiffs' expert already tested the same portions of the metal roof samples in the same manner even before handing them over to Defendants expert, Plaintiffs have not met their burden to prove that exceptional circumstances overcome the work-product privilege that applies to United States Steel and Shannon's materials.

[Doc. 41.]. Since Plaintiffs expert metallurgist already performed his own cross-sectional metallography testing of the roof, Plaintiffs' statement that they have been prejudiced by their inability to perform cross-sectional metallography testing is a false statement that cannot be relied upon this Court as evidence of prejudice to Plaintiffs.

In conclusion, this Court's judgment that Plaintiffs were prejudiced solely because they only had one week to provide a rebuttal report under the federal rules was based on a manifest error of fact. Plaintiffs actually had 2 months and 30 days to supplement their report in response to Dutton's report under Rule 26(e)(2). This was plenty of time for Plaintiffs to supplement their

own report, especially since they already had access to their own testing data on the roof samples. For this reason, this Court's order excluding Ronald Dutton's supplemental report should be rescinded.

C. ***This Court's judgment about the "diminished" importance of Dutton's testimony to Church Mutual's case is based on a manifest error of law because it directly contradicts a previous ruling by the Court on this exact issue. Allowing Plaintiffs' expert to falsely testify regarding the lack of basis for Dutton's for opinions at trial would result in a manifest injustice.***

In the order excluding Dutton's testimony regarding the testing data outlined in his supplemental report, this Court ruled that Dutton's testimony in his supplemental report is important, but excluding it would not leave Church Mutual without any evidence "explaining why the roof damage is cosmetic instead of functional." [Doc. 61, p. 8]. The Court stated that Church Mutual "can still use its three other expert reports to make the same conclusion, diminishing the testimony's important." *Id.* This Court's ruling that Dutton's opinions are of diminished importance directly contradicts the Court's prior ruling that his testimony was essential when it granted Defendant's Motion to Late Designate Ronald Dutton. [Doc. 31, p. 3] In that opinion, the court correctly held:

> Duttons's testimony is critical to Church Mutual's defense that a policy exclusion applies. As Church Mutual notes, Cleburne designated a metallurgist who provided an opinion based on his "microscopic analysis of roof samples." Doc. 30, Def.'s Reply, 3. Church Mutual cannot address this opinion without designating a metallurgist as an expert. *Id.* This testimony is needed to establish whether the hail that hit the roof caused structural or only cosmetic damages, which would directly answer whether a policy exclusion applies. Doc. 26, Mot. Leave, 3.

[Doc. 31, p. 3.] No new developments have occurred that would make Dutton's testimony less essential than it was in the first place since the date of this Court's order granting Defendant leave to designate Ronald Dutton. Plaintiffs still have a metallurgist who plans to introduce his own metallurgical testing data and opinions at trial. **Exhibits A, C**. Ronald Dutton is the only expert Church Mutual has that can address the opinions of Plaintiffs' metallurgist. This Court can revisit

Defendant's arguments on this matter in subsection b. of Defendant's Motion for Leave to Late Designate Ronald Dutton [Doc. 26.] and in subsection b. of Defendant's Reply to Plaintiffs' Response to this motion [Doc. 30].

In addition, as discussed above, Plaintiffs' metallurgist subsequently issued a rebuttal report showing that he plans to testify at trial that Ronald Dutton's own report is inadequate because it is not based on testing data. In Plaintiffs' experts' rebuttal to Dutton's first report, he states: "In the 'Element' Report' section of the Church Mutual report, page 6., Mr. Dutton uses stereoscope images to somehow confirm age differences between divots. This is *technically incorrect* and there is no testing data to confirm the statement." [**Exhibit C**, ¶ 3.0.3.] This is false. There is actually testing data backing up Dutton's opinion. But this Court's order exclusion Dutton's supplemental report has prohibited Ronald Dutton from testifying about the data. The unjust result of this is that Plaintiffs' metallurgist will be able to make a statement about Dutton's opinion that is false, and Defendant has now been prohibited by this Court's order from presenting testimony showing that this statement is false. This result is manifestly unjust, inequitable, and not in line with applicable policy. For this reason, this Court's order should be overturned.

## IV.
### PRAYER

This Court's judgment granting Plaintiffs' motion to exclude Ronald Dutton's supplemental report is clearly erroneous and will cause manifest injustice. Therefore, Church Mutual respectfully asks the Court to rescind its order excluding Ronald Dutton's supplemental report [Doc. 61] and for such other and further relief to which it may be justly entitled.

        Respectfully submitted,

        **THOMPSON, COE, COUSINS & IRONS, L.L.P.**

       By: */s/ Lauren Figaro*
        J. Mark Kressenberg
        Texas State Bar No. 11725900
        mkressenberg@thompsoncoe.com
        Lauren Figaro
        State Bar No. 24087510
        lfigaro@thompsoncoe.com
        4400 Post Oak Parkway, Suite 1000
        Houston, Texas 77027
        Telephone: (713) 403-8210
        Facsimile: (713) 403-8299
         ~and~
        Rhonda J. Thompson – Local Counsel
        State Bar No. 24029862
        **THOMPSON, COE, COUSINS & IRONS, LLP**
        700 North Pearl Street, 25th Floor
        Dallas, Texas 75201
        Telephone: (214) 871-8200
        Facsimile: (214) 871-8209
        rthompson@thompsoncoe.com

        **ATTORNEYS FOR DEFENDANT,**
        **CHURCH MUTUAL INSURANCE, S.I.**

## **CERTIFICATE OF CONFERENCE**

   In accordance with Local Rule 7.1b, Northern District of Texas Local Rules, I hereby affirm that I conferenced with Plaintiff's counsel Ben Doyle on April 16, 2025 by email on the above Motion to Late File and he is opposed to this Motion.

        /s/ *Lauren Figaro*
        Lauren Figaro

## CERTIFICATE OF SERVICE

      I hereby certify that on April 16, 2025, a true and correct copy of the foregoing has been served on Plaintiffs' counsel in accordance with the Federal Rules of Civil Procedure:

Benjamin D. Doyle
STOCKARD, JOHNSTON, BROWN, NETARDUS & DOYLE, P.C.
P.O. Box 3280
Amarillo, Texas 79116-3280
Telephone: (806) 372-2202
Facsimile: (806) 379-7799
bdoyle@sjblawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

*/s/ Lauren Figaro*
Lauren Figaro